# E. C. KRUEGER v. THE FIRST STATE BANK OF BOWBELLS.

## (163 N. W. 817.)

**Banks — deposit — action to recover — obligations of plaintiff to defendant — on appeal bond — used for — defense — surety on bond — appropriation of deposit.**

In this case the plaintiff sues to recover money deposited to his credit in the defendant bank. The defense is that the bank used the deposit money to pay an obligation of the plaintiff on an appeal bond which he signed in a suit of one Kennedy against the State Bank of Bowbells. As it appears that the defendant was the successor of the state bank and assumed its debts and liabilities, it had no right to pay its own obligation and to charge the same to the plaintiff, whose obligation was of surety on the bond.

Opinion filed June 2, 1917.

Appeal from the District Court of Burke County, Honorable *K. E. Leighton*, Judge.

Affirmed.

*John E. Greene (Chas. J. Fisk, of counsel)*, for appellant.

The agreement between the banks, when defendant bought out the old bank, does not purport to be a memorial covering the transactions between these two banks, but is merely an *ex parte* recital that a proposal had theretofore been made, looking to a sale and purchase of the assets, and an assumption of liabilities.

The defendant is not bound by such a mere *ex parte* recital, upon the theory that it constituted a written contract between these banks, and parol evidence may be received to show the actual contract. 4 Wig-

more, Ev. §§ 2425, 2429 to 2431 inclusive, and authorities cited; 10 R. C. L. pp. 1019, 1024, and 1030, and cases cited.

An appeal bond at most only creates a contingent liability, and at the time defendant bought out the old bank, it only assumed actual, existing liabilities, and parol evidence is admissible to show that any such contingent liability was not within the contemplation of the parties. 5 Chamberlayne, Ev. § 3559, and cases cited; 17 Cyc. 724 to 726; Pope v. Machias Water Power & Mill Co. 52 Me. 535; Beemer v. Packard, 92 Hun, 546, 38 N. Y. Supp. 1045; Long v. Long, 44 Mo. App. 141; Peaks v. Lord, 42 Neb. 15, 60 N. W. 349; Perret v. King, 30 La. Ann. 1368, 31 Am. Rep. 240; 6 R. C. L. 875.

The rule against the admission of parol evidence to vary or contradict a written contract does not apply where the writing is collateral to the issue involved and the action is not based upon such writing. 17 Cyc. 741 (37), 749; Luther v. Hunter, 7 N. D. 544, 75 N. W. 916.

*D. C. Greenleaf,* for respondent.

The payment of the Kennedy judgment against the old bank, by defendant, was a voluntary payment on its part, and the exhibits offered in evidence, being the resolutions of the dealing banks, were for the purpose of supporting the contention that the payment of such judgments was voluntary, and was not an advancement or loan to plaintiff.

If the officers were mistaken as to the law and as to the bank's liability, it is not the fault of plaintiff. Charnock v. Jones, 16 L.R.A. (N.S.) 233, note.

If defendant bank bought the assets of the old bank, and did not assume its liabilities, then it was not a transaction in due course of business, and defendant is not an innocent purchaser. The defendant held the assets of the old bank in trust for the benefit of its creditors. Williams v. Commercial Nat. Bank, 49 Or. 492, 11 L.R.A.(N.S.) 857, 90 Pac. 1012, 91 Pac. 443; 10 Cyc. 1265.

The property transferred by the selling bank to defendant was a fund that the law sets apart or charges with a lien in favor of creditors. The debtor corporation cannot dispose of it or encumber it to the prejudice of the creditors; there exists an equitable lien, and defendant took subject thereto. Jefferson Nat. Bank v. Texas Invest. Co. 74 Tex. 437, 12 S. W. 101; Sanger v. Upton, 91 U. S. 60, 23 L. ed. 222; Bartlett v. Drew, 57 N. Y. 589; Chicago, R. I. & P. R. Co. v. Howard, 7 Wall.

409, 19 L. ed. 120; Kendall v. Stokes, 3 How. 87, 11 L. ed. 506; Clapp v. Peterson, 104 Ill. 30; Chicago, M. & St. P. R. Co. v. Third Nat. Bank, 134 U. S. 276, 33 L. ed. 900, 10 Sup. Ct. Rep. 550; Vance v. McNabb Coal & Coke Co. 92 Tenn. 47, 20 S. W. 424; Hibernia Ins. Co. v. St. Louis & N. O. Transp. Co. 4 McCrary, 432, 13 Fed. 524; Brum v. Merchants' Mut. Ins. Co. 4 Woods, 156, 16 Fed. 143; Blair v. St. Louis, H. & K. R. Co. 22 Fed. 38; Hatch v. Dana, 101 U. S. 213, 25 L. ed. 887; Pollard v. Bailey, 20 Wall. 520, 22 L. ed. 376.

ROBINSON, J.   The plaintiff sues to recover over $2,000 which he had on deposit with the bank.   The defense is that the money was paid out for and at the request of the plaintiff on a judgment against him by one Kennedy.   A verdict and judgment was given for the plaintiff and defendant appeals.   The plaintiff claims that the Kennedy judgment was recovered against him on an appeal bond which he signed as surety for one of the banks.   The defendant bank absorbed and took over the property and assets of the state bank, in whose name the appeal was taken.   The state bank was perfectly solvent and had property more than enough to pay all its debts and liabilities, and the defendant purchased all the property and became the successor of the state bank.   The claim is that, by special contract and also by operation of law, the defendant bank became liable for all the debts and obligations of the state bank, including the liability on the appeal bond made to Kennedy.

In 1906 the state bank received from Kennedy a draft for $1,700, on which it received the money and wrongfully used the same.   Kennedy sued the bank to recover his money with interest.   There was no real defense and judgment was given against the bank for $2,020, and on March 13, 1909, for the purpose of delay, an appeal was taken to the supreme court and the judgment was affirmed.   22 N. D. 70, 132 N. W. 657.   The appeal bond was dated October 2, 1909, and signed thus:

> State Bank of Bowbells,
> By J. D. Langford,
> Cashier.
> A. B. Bickford.
> E. C. Krueger.

On the trial of this case there was a mass of oral and documentary evidence submitted on the question as to whether or not the defendant assumed the liability of the state bank. It was fairly submitted to the jury as a question of fact, and the verdict was against the defendant. A motion for a new trial was denied. The reasons given were that there was no prejudicial error, and that the defendant had assumed the liability of the state bank upon the Kennedy judgment.

Exhibits 4, 5, and 6 are minutes of the stockholders and directors of the respective banks.

Exhibit 4: "A meeting of the stockholders of the State Bank of Bowbells was held at Bowbells this 16th day of December, 1907, to consider a proposition made by the First State Bank of Bowbells to take on all assets and assume all liabilities of the said State Bank of Bowbells at par value. On motion the proposition was accepted and transfer ordered."

Exhibit 5: "Bowbells, N. D., Dec. 24, 1907. A meeting of the stockholders and directors was called by the president for the purpose of discussing the purchase of the State Bank of Bowbells. It was decided to take over the business of the state bank, assume their assets and liabilities, thus merging the two institutions under the name of the First State Bank."

Exhibit 6: "Bowbells, N. D., Jan. 4, 1908. A meeting of the stockholders and directors of the First State Bank of Bowbells was held in the office of the bank, and the affairs of the bank examined. It was found that the affairs of the state bank had been assumed as per purchase authorized under meeting of December 24, 1907." G. L. Bickford was chosen president; A. B. Bickford, cashier.

In the brief of counsel for defendant and appellant the leading question argued (and the only question of the case) is: Did the defendant bank in its transaction with the other bank assume its contingent liability to W. T. Kennedy on the appeal bond?

Counsel for defendant does everywhere designate it as a "contingent liability" and "a mere contingent future liability," and he bases his argument largely on the assumed contingency of the liability. But in truth it was not at all contingent; and it was an existing, and not a future, liability. The state bank had received and used Kennedy's

draft for $1,700, and the defense was the merest sham, and the facts were known to the officers of both banks.

The manifest purpose of one bank was to close out its business and to dispose of it, and the purpose and agreement of the defendant bank and its stockholders, as expressed by their resolution, was "to take over the business of the state bank and to assume its assets and liabilities, thus merging the two institutions under the name of the First State Bank." The appeal bond was signed after the merger, and it was signed by A. B. Bickford, cashier of the defendant bank, and his name was put on the bond before the name of the plaintiff, and presumably the plaintiff signed the bond at the request of the defendant bank or its cashier to stave off its liability on an obligation for over $2,000. While the appeal was taken in the name of the defunct bank, there are reasons for thinking that it was in reality taken by its successor, the defendant. If the defendant bank took the appeal, or if the appeal was really taken for its benefit, if it induced the plaintiff to sign the appeal bond or if it in any way became legally bound to pay the Kennedy judgment, then as surety for the defendant bank the plaintiff had a perfect right to request it to pay the Kennedy judgment and to discharge him from the bond to which he had subscribed his name under the name of defendant's cashier.

On the trial the court excluded offers to prove in effect that, when the defendant bank contracted to absorb the other bank, *no special reference was made to Kennedy's claim;* that the book assets of the state bank amounted to over $53,000, and its liabilities to over $43,000, and that the difference was paid to the state bank, and that it assumed liabilities which were as follows:

Certificates of deposit ............................................. $23,280.12
Individual deposits ................................................. 20,161.53
Interest ............................................................ 325.76

The proof would have rather strengthened the claim of the plaintiff. It indicates that the defendant bank assumed liability for the individual deposits, and the claim of Kennedy was an individual deposit of $1,700, on which there never should have been any question or dispute. Then the court excluded an offer to prove an oral agreement

between the two banks that the First State Bank should not assume any liability for the claim of Kennedy. This offer is in conflict with the prior offer to show that, at the time of taking over the assets and assuming the liability of the State Bank of Bowbells, *no reference was made to the claim of Kennedy;* and the offer was not sufficiently specific, as it did not in any manner disclose the facts to be proved, and it contradicted the record evidence of the agreement on which all the parties acted. There is not much weight to be attached to such vague and conflicting offers of testimony, especially when the offers are made to contradict the record of the transaction as made and entered on the books of both banks.

On the whole it appears that the case is fairly submitted to the jury, and the verdict is just and right. There should be an end to this long litigation.

Judgment affirmed.

CHRISTIANSON, J. (concurring specially). I concur in an affirmance of the judgment. I am not, however, prepared either to concur in or dissent from the reasons on which the opinion prepared by Mr. Justice Robinson is based.

I shall therefore briefly set forth the reasons which lead me to the conclusion that the judgment should be affirmed.

The answer "admits that on the 19th day of September, A. D. 1914, the defendant had on deposit in its bank, to the credit of the said plaintiff, the sum of $2,068.66." The answer further, "by way of counterclaim, alleges: That between said 19th day of September, 1914, and the 1st day of October, 1914, the defendant, by authority and at the instance and request of the plaintiff, paid for the use and benefit of said plaintiff of the moneys so on deposit to his credit, the full sum of $2,054.51. That the said defendant now has in its possession belonging to said plaintiff the sum of $14.15, for which said sum the defendant hereby offers judgment in favor of the plaintiff, with costs accrued to the date of service of the answer."

The plaintiff interposed a reply denying the allegations of the counterclaim and refusing the offer of judgment contained therein. The issue raised by the counterclaim and the reply was the only issue of fact presented by the pleadings in the case. As developed by the testimony,

this issue really resolved itself into whether the plaintiff Krueger in January, 1912, requested the bank to loan to, or advance for, him the necessary moneys with which to pay the Kennedy judgment. Upon this question there was a square conflict in the evidence. It is conceded that the arrangement with respect to the payment of the Kennedy judgment was made between Phelps, the vice president of the defendant bank, and the plaintiff, Krueger. It is also conceded that this arrangement or agreement rested wholly in parol; that no written memorandum was made; nor was any note or other evidence of indebtedness taken from Krueger. According to the testimony of Phelps, there were three persons present when the arrangement was made, namely, Phelps, and Powers, the cashier of the defendant bank, and the plaintiff, Krueger. Powers, however, testified that he had no personal knowledge or recollection of the conversation, and that the principal part thereof took place between Phelps and Krueger in the back room of the bank, while Powers was in the front room.

Phelps testified that Krueger requested the bank to advance the moneys required to pay the Kennedy judgment; and that pursuant to such request the bank did advance such moneys and paid the judgment, and subsequently charged the amount so advanced against Krueger's checking account in the bank.

The plaintiff, Krueger, testified that at the time the action was commenced against him on the supersedeas bond in January, 1912, he had a conversation with Mr. Phelps in regard to the matter; that during such conversation he directed the attention of Phelps to the two resolutions adopted by the stockholders of the two banks, at the time the defendant bank purchased the assets of the State Bank of Bowbells; that thereupon he and Phelps studied the resolutions together, and that after study and consideration thereof Phelps expressed it to be his opinion that under the resolutions the defendant bank had assumed liability for the claim upon which the Kennedy judgment was based, and consequently was liable for the payment of such judgment. Krueger says: "I never asked the bank to loan me $2,300. Phelps said the bank was liable under the resolutions, and that the defendant bank would pay the judgment, get the $500 from Crane and $500 from Landsborough and carry the collateral in stocks and bonds and let it work out." Krueger further testified that he did not authorize

Phelps to send the money to pay the judgment, and that Phelps sent it for the bank. Krueger also testified that the defendant bank at one time charged against him upon his bank book the expense of a certain trip made by Phelps to Idaho to see Mr. Landsborough in regard to the Kennedy judgment; that plaintiff, upon receiving his bank book, objected to such charge, and that the defendant bank receded from its position and eliminated the charge. The evidence shows that the bank paid the Kennedy judgment in January, 1912; that in the month of April following, the plaintiff, Krueger, had on deposit in the defendant bank in his checking account therein an amount considerably in excess of the amount of money involved in this litigation; that such moneys remained on deposit in the bank for some time; and that the defendant did not endeavor to charge the amount of the alleged claim to the account of Krueger until in September, 1914. The evidence also discloses the fact that Phelps, the vice president of the defendant bank, was a lawyer.

It seems clear to me that the case involves purely and simply a question of fact, *viz.*, whether the bank advanced the moneys to pay the Kennedy judgment upon the request of the plaintiff, Krueger, or whether it paid the same voluntarily and without any request from Krueger.

No error is predicated upon the court's instructions to the jury, and consequently the instructions must be assumed to be correct.

Appellant, however, assigns error on the court's refusal to receive certain evidence offered by the defendant, for the purpose of showing what liabilities were contemplated by the parties in the two resolutions referred to in the majority opinion. Defendant offered to prove that it was agreed by the directors and stockholders of the respective banks that the then pending suit of Kennedy, upon which the judgment was obtained, was not to be assumed by the defendant bank.

In my opinion it is not necessary to determine in this case whether the two resolutions must be taken to embody the entire contract, or whether they are to be deemed merely evidence tending to establish contractual relations which may be explained and supplemented by other testimony. An examination of the record shows that the two resolutions were received in evidence without objection, although a considerable time subsequent thereto defendant moved that they be stricken out.

Whether the defendant bank had assumed the Kennedy claim under its contract with the State Bank of Bowbells is not an issue raised by the pleadings. The sole issue raised by the pleadings is whether the defendant "by authority, and at the instance and request of the plaintiff, paid for the use and benefit of said plaintiff, of the moneys so on deposit to his credit, the full sum of $2,054.51." It is manifest that the defendant bank had no authority to pay such judgment of its own volition, and charge the same against plaintiff's account in the bank. Whether plaintiff requested defendant bank to pay such judgment depends upon what was said in the conversation between the plaintiff and Phelps. As already stated, the testimony of the plaintiff, Krueger, is to the effect that these resolutions were considered and read over during the conversation between Krueger and Phelps. Powers, the cashier of the defendant bank, also testified that Phelps had stated to him that "a broad construction may be applied to the resolutions," and the bank thereby held responsible for the Kennedy judgment under the resolutions.

The jury was entitled to know everything that was said during such conversation. And as these resolutions, according to plaintiff's testimony, formed part of the matter discussed and considered during such conversation, they were properly received in evidence in connection therewith, regardless of their contractual force or effect. What the defendant offered to prove did not relate to anything said or considered during the conversation between Krueger and Phelps, but something which took place at the time the resolutions were adopted five years previous thereto. It seems self-evident that this was not material and could have no possible bearing upon the conversation which took place between Phelps and Krueger, unless it was also shown that the matter which defendant offered to prove was known to Phelps and Krueger, and considered or discussed by them during their conversation.

The pivotal question in the case was whether the plaintiff requested the defendant bank to advance the money and pay the Kennedy judgment for him. The answer to this question must be found in the conversation between Phelps and Krueger.

The jury which heard the testimony upon this question believed the plaintiff's version thereof to be the correct one. The jury's finding

is amply supported by the evidence, and is binding on this court. The judgment should be affirmed.

On Petition for Rehearing. Filed July 21st, 1917.

ROBINSON, J.   No decision of a cause is ever satisfactory to the party against whom it is given.   Though this case has been well argued and considered, a motion is filed to reargue and reconsider it on every point that has been argued and considered.   The case is fairly debatable. It is one on which lawyers and judges may differ and continue to differ even if there were a dozen arguments.   The case turns not so much on questions of law as on disputed questions of fact, and in reasoning and drawing inferences from proved facts there is great reason for differences.   The facts and the law are stated in the opinion, which has been signed and concurred in by all the judges and by the special opinion of Judge Christianson.   Thus, all the judges of this court and the judge of the district court have concurred in the verdict of the jury, and it is idle to continue the argument.   Motion denied.